UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT DILLINGER, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| vs. | ) 1:20-cv-2257-JMS-DLP |
| | ) |
| MICHAEL BRANDT, and | ) |
| GREATER INDIANAPOLIS ASSOCIATION FOR | ) |
| LUTHERAN SECONDARY EDUCATION INC., | ) |
| | ) |
| *Defendants*. | ) |

## ORDER

Robert Dillinger, as next friend of his minor daughter, K.D., brings this action against the Greater Indianapolis Association for Lutheran Secondary Education, Inc. ("the School") and its principal, Michael Brandt, in his official capacity. Mr. Dillinger alleges that Defendants violated Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681-1688, by failing to investigate K.D.'s allegation that she was raped by another student, failing to discipline the accused student, failing to enforce a protective order that K.D. obtained against the accused student, and failing to make reasonable accommodations for the release of K.D.'s transcripts to facilitate her transfer to another school. Defendants have filed a Verified Motion for Protective Order, [Filing No. 11], which is now ripe for the Court's decision.

## I.
### DISCUSSION

In their motion, Defendants "request that the Court to enter a protective order to protect the jury pool from public comments by [Mr. Dillinger's] counsel that materially affect the adjudicative process." [Filing No. 11 at 1.] Defendants take issue with comments that Mr. Dillinger's counsel, Ashley Kincaid Eve, made during a press conference concerning this case

1

and in several posts on her personal Facebook page, screenshots of which are attached as exhibits to the motion. [Filing No. 11 at 1-3; Filing No. 11-1; Filing No. 11-2; Filing No. 11-3.] Specifically, Defendants point to the following comments made by Ms. Kincaid Eve during the press conference, which she live streamed on her personal Facebook page:

- "[The School] made it beyond clear to [K.D.] and her family that they do not care that she was raped."

- "We can hold [the School] accountable for this rape."

- "[The School] has made it clear that rapists are fine."

- "And by refusing to accommodate this family as small accommodation like sending over transcripts, essentially, what the School now is doing is holding [K.D.] hostage where she is forced to either not go to school at all or go to school with her rapist."

[Filing No. 11 at 1 (citing the August 28, 2020 video available at https://www.facebook.com/finallylegallyblonde).]

Defendants also note that, on August 28, 2020, Ms. Kincaid Eve shared a link to a news article about the lawsuit with a caption that reads, in part, "Let's burn it down guys." [Filing No. 11 at 2; Filing No. 11-1.] Defendants "perceived" this statement to be "a threat of violence toward the School." [Filing No. 11 at 2.] However, Defendants acknowledge, the August 28 post has since been removed, and Ms. Kincaid Eve made another post on September 4, 2020 stating, *inter alia*, that she was "not advocating for the physical burning of that school" but instead "advocating for the metaphorical burning down of a system that ignores and refuses to protect women who have been victims of sex crimes." [Filing No. 11 at 2-3; Filing No. 11-2.]

Defendants further assert in their motion that, on August 29, 2020, Ms. Kincaid Eve reposted the video of the August 28 press conference with a caption that read, in relevant part: "AND THE RESPONSE TO THIS?!?!? WOW. WE ARE JUST GETTING STARTED. . . .

There is a hostile culture that condones sexual harassment at [the School]. . . . Believe you me when I say this is just the beginning, and this is just a preview." [Filing No. 11 at 3; Filing No. 11-3.]

Defendants argue that they "have significant concern about the tenor and substance of Plaintiff's counsel's public comments relating to this matter, and the effect that such comments may have in materially prejudicing Defendants in any eventual trial of this matter." [Filing No. 11 at 3.] They argue that Ms. Kincaid Eve's comments are "inflammatory, cast the School in a false light, and are untrue," and that her repeated Facebook posts and references to this being "just the beginning" are indicative of an intent to continue to make extrajudicial statements concerning this case. [Filing No. 11 at 3-4.]

In response, Mr. Dillinger asserts that he "wishes to inform the public of the way the criminal justice system has failed his daughter and wishes to inform parents how Defendants investigate allegations of sexual assault." [Filing No. 12 at 1.] He argues that Ms. Kincaid Eve's comments that the School has made clear that it does not care about his daughter's rape are consistent with his Complaint, which alleges that the School showed deliberate indifference to K.D.'s assault. [Filing No. 12 at 1.] As for the comment "Let's burn it down guys," Mr. Dillinger points out that Ms. Kincaid Eve already clarified that "she was speaking colloquially and not actually advocating for the literal burning of anything," and he asserts that if Defendants genuinely perceived her original remark to constitute a threat of violence, they "should have contacted law enforcement and taken action personally against counsel." [Filing No. 12 at 2.] Mr. Dillinger also argues that there is significant public interest in this lawsuit, and he and his daughter have a First Amendment right to speak about the lawsuit both personally and through counsel. [Filing No. 12 at 3.] Furthermore, he argues, "publicity for this case has only attracted

3

local media, and given Defendants' counsels' skill and expertise, as well as the length of time before this case would go before a jury, it is highly unlikely that Defendants would not be able to find an impartial jury panel and thus Plaintiff's statements personally or through counsel have not adversely impacted Defendants' ability [to receive] a fair trial." [Filing No. 12 at 3.] He asserts that Defendants are merely trying to silence him and his daughter in violation of the First Amendment. [Filing No. 12 at 3.]

In reply, Defendants maintain that Ms. Kincaid Eve's public comments about the School are inflammatory and untrue and therefore violate Indiana Rule of Professional Conduct 3.6. [Filing No. 13 at 1.] Defendants also assert that, on September 7, 2020—after Mr. Dillinger had filed his response to this motion—Ms. Kincaid Eve posted and then removed a status on her personal Facebook page, which stated in relevant part as follows:

> And I have some hot shot attorneys who specialize in "sorority and fraternity law" trying to shut me up by promoting my clients [sic] voice because I'm trying to influence a potential jury pool. Please.
>
> By the way, does anyone know what it means to specialize in "fraternity and sorority law"? Because I can't help but think that's specializing in how to help frat bro's get away with rape…or maybe hazing??
>
> Or maybe it's a bro who just can't let those good old college days go.
>
> Either way, doesn't seem like something I'd be proud to announce I specialize in but makes total sense for someone defending a school who doesn't care about rape.

[Filing No. 13 at 2.]  A screenshot of the post is attached to Defendants' reply. [Filing No. 13-1.] Defendants argue that they have not sought to interfere with Mr. Dillinger's or K.D.'s First Amendment rights, as they simply seek an order restraining Ms. Kincaid Eve's "ongoing commentary that mischaracterizes the facts" and preventing further public comments that have a

substantial likelihood of materially prejudicing the adjudicative process, including tainting the potential jury pool. [Filing No. 13 at 2-3.]

"Attorneys' statements are often the source of prejudicial publicity, especially since their views and comments are usually accepted by the public on the basis that they come from a wellspring of reliable information. Restricting such comment can be a significant aid in controlling publicity which may affect the fairness of a trial." *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242, 250 (7th Cir. 1975) (footnote omitted). "Consequently, when irreconcilable conflicts do arise, the right to a fair trial, guaranteed . . . to all persons by the Due Process Clause of the Fourteenth Amendment, must take precedence over the right to make comments about pending litigation by lawyers who are associated with that litigation if such comments are apt to seriously threaten the integrity of the judicial process." *Id*. at 248. However, it is well established that "[o]nly those comments that pose a 'serious and imminent threat' of interference with the fair administration of justice can be constitutionally proscribed." *Id*. at 249; *see also Chase v. Robson*, 435 F.2d 1059, 1061 (7th Cir. 1970) ("We hold that before a trial court can limit defendants' and their attorneys' exercise of first amendment rights of freedom of speech, the record must contain sufficient specific findings by the trial court establishing that defendants' and their attorneys' conduct is 'a serious and imminent threat to the administration of justice.'" (quoting *Craig v. Harney*, 331 U.S. 367, 373 (1947))).

Here, the Court cannot conclude on the record before it that Ms. Kincaid Eve's public comments pose a serious and imminent threat of interference with the fair administration of justice. Without expressing any opinion as to the veracity of the comments or whether they comply with the applicable rules of professional conduct or other relevant law, the Court assures the parties that, should this matter proceed to trial, any impact that Ms. Kincaid Eve's comments

may have on any potential juror will be addressed through a robust *voir dire* process. The Court is not persuaded that the reach of Ms. Kincaid Eve's comments on her personal Facebook page is so extensive that the Court and the parties will be unable to secure an impartial jury using the ordinary procedures for screening potential jurors. Accordingly, Defendants' Verified Motion for Protective Order is **DENIED**.

However, the denial of the motion should not be construed as condoning the conduct at issue, and although the Court at this time will not go so far as to silence or restrain the speech of anyone involved in this litigation, it is worth emphasizing that all attorneys practicing before this Court are expected to comply at all times with both the Indiana Rules of Professional Conduct and the Seventh Circuit Standards of Professional Conduct. S.D. Ind. Local Rule 83-5(e) (addressing attorneys admitted to practice before this Court); S.D. Ind. Local Rule 83-6(a)(3) addressing attorneys appearing *pro hac vice*). Notably, the Preamble to the Seventh Circuit Standards remind us that "[a] lawyer's conduct should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms, and Indiana Rule of Professional Conduct 3.6(a) makes clear that a lawyer "shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding."

In addition, the Court observes that comments criticizing or disparaging opposing counsel are neither appropriate nor helpful. The Seventh Circuit Standards require that all attorneys: (1) "treat all other counsel, parties, and witnesses in a civil and courteous manner, not only in court, but also in all other written and oral communications"; (2) not "abuse or indulge in offensive conduct directed to other counsel"; and (3) "abstain from disparaging personal remarks

or acrimony toward other counsel." STANDARDS FOR PROFESSIONAL CONDUCT WITHIN THE FEDERAL SEVENTH JUDICIAL CIRCUIT, Lawyers' Duties to Other Counsel, ¶¶ 1-2.

## II.
### CONCLUSION

For the foregoing reasons, Defendants' Verified Motion for Protective Order, [11], is **DENIED**. This denial shall not be construed as limiting any party's ability to notify the Court or the appropriate disciplinary authority should they believe any counsel has failed to comply with the rules and standards referenced herein. In addition, this denial is without prejudice to Defendants' ability to seek Court intervention in the event of Plaintiff's counsel's future noncompliance with this Order.

Date: 9/22/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**